[No. 42746.    En Banc.    February 7, 1974.]

SHARON BUSHMAN, *Petitioner*, v. NEW HOLLAND DIVISION OF SPERRY RAND CORPORATION *et al.*, *Respondents*.

*Ken Earl,* for petitioner.

*Randall & Danskin* and *A. A. Lundin* and *Robert T. Carter,* for respondents.

HAMILTON, J.—Sharon Bushman, plaintiff-petitioner, surviving wife of Milo Bushman and personal representative of his estate, brought this action for the wrongful death of her husband. She alleged his death was caused by the defective condition of a New Holland Self-Propelled Haro-Bed, Model No. 1045, an automatic bale loading wagon, manufactured by defendant-respondent New Holland, who purchased the manufacturing rights from a predecessor. The haro-bed was owned by defendants-respondents Grant Nelson and Russell Nelson and borrowed from Grant Nelson by decedent under an agreement whereby farm machinery was loaned to decedent and his father, Martin Bushman, in exchange for farm work done by them.

Milo and Sharon Bushman lived on a farm in Quincy, Washington. On August 5, 1972, Milo was operating the haro-bed for the purpose of hauling baled hay. After two bales of hay were set on the second table of the haro-bed, the first table became stuck in the up position. While attempting to adjust the machine, decedent was crushed to death when the first table returned to its down position under hydraulic power activated by a double-acting hydraulic ram.

Plaintiff in her action against New Holland alleged negligence, breach of warranty and strict liability. She claimed that defendant failed to provide a check or relief valve to stop the hydraulic valve from lowering the tables, should a person become entangled in the machinery while attempting to adjust it. Plaintiff also alleged that New Holland: (1) failed to give adequate warning of the dangers, hazards and risks involved in the operation of the haro-bed, and (2) failed to provide for a single-acting hydraulic valve to actuate the first table, so that the table would float back to its down position without the assistance of hydraulic pressure.

The complaint also alleged that defendant Grant Nelson

was negligent for failing to warn decedent of the proper way to adjust the machine if it malfunctioned.

In December 1972, a list of 21 interrogatories was served on New Holland by plaintiff. Objections were raised to interrogatories Nos. 3, 5 through 18, and 20, as being immaterial and irrelevant, and in some instances burdensome. Plaintiff moved to compel answers to those interrogatories. The trial court ordered that interrogatories Nos. 14, 15, and 17(a), (b), and (c) be answered but sustained New Holland's objections to interrogatories Nos. 3, 5 through 13, 16, 17(d), and 20. The latter interrogatories dealt with information concerning the acquisition of the haro-bed, its safety requirements and design, safety tests conducted by New Holland on the machine, the number of suits for injuries involving the haro-bed, the reason for discontinuance of the double-acting hydraulic cylinder, the names of safety committees on which employees of New Holland had served, and the names of persons from whom statements were taken by New Holland concerning the incident. Interrogatory No. 20 also asked for a copy of the statements taken. Plaintiff concedes this request amounted to an invasion of New Holland's work product and was, therefore, improper as an interrogatory.

Plaintiff sought a writ of certiorari to review the trial court's order. This court granted the writ.

The first question to be determined is whether the instant writ of certiorari should have been granted to review a pretrial discovery order. RCW 7.16.040 specifies that certiorari will not lie unless (1) a judicial official acts without or in excess of his jurisdiction, and (2) there is no adequate remedy at law. Defendant contends that, according to *Weber v. Biddle,* 72 Wn.2d 22, 431 P.2d 705 (1967), which reviewed on appeal an order sustaining objections to interrogatories, the remedy by appeal is adequate in this case and the writ should not have issued.

Ordinarily, this court will not entertain such a writ because the remedy by appeal is generally adequate. How-

ever, the issuance of a writ of certiorari is to some extent discretionary. *State ex rel. Gebenini v. Wright,* 43 Wn.2d 829, 264 P.2d 1091 (1953). The reviewing court must retain a measure of latitude in deciding whether to grant certiorari in a particular case. *Oliver v. American Motors Corp.,* 70 Wn.2d 875, 425 P.2d 647 (1967).

In *State v. Whitney,* 69 Wn.2d 256, 260-61, 418 P.2d 143 (1966), we held that at least two factors enter into a grant of certiorari with respect to interim orders. They are:

> [(1)] the error alleged is not unlikely to recur in other courts . . . [and (2)] it [the error] involves a patently erroneous construction of a statute, as a result of which the prosecution has been deprived of a long accepted and highly useful and reliable means of establishing responsibility for a crime.

In *Whitney,* certiorari was sought to review the trial court's order denying the admission of fingerprint impressions taken from defendant. The trial court excluded the evidence on the ground that it was privileged pursuant to RCW 72.50.100. This court issued the writ and held that RCW 72.50.100 was incorrectly interpreted. Such error, likely to reoccur if unchecked, would have interfered with the legitimate prosecution of criminal cases.

Similarly, the alleged error by the trial court in the instant case, in sustaining the objections to the interrogatories, is likely to reoccur if certiorari is not granted. If the alleged error is not corrected, other trial courts could conceivably resort to the same position that was taken by the trial court in the instant case. Also, the trial court's alleged erroneous interpretation of the discovery rules would greatly hinder the plaintiff in her investigation of the case and greatly restrict her ability to present evidence at trial. In such an instance, the remedy by appeal could hardly be said to be adequate.

This court has previously granted extraordinary relief to review pretrial discovery orders pertaining to interrogatories. In *State ex rel. Hayashi v. Ronald,* 134 Wash. 152, 235 P. 21 (1925), we granted an application for a writ of man-

damus to compel the trial court to grant a commission to take a deposition where the interrogatories proposed to be answered were proper and material. We there held that, because of the materiality of the information sought by the petitioner, the matter (of granting the commission to take a deposition) was not discretionary with the trial court so that the writ should issue. The remedy by appeal was held to be inadequate. In *State ex rel. Bronson v. Superior Court*, 194 Wash. 339, 77 P.2d 997 (1938), certiorari was granted to review an order denying a motion to strike interrogatories. Justice Beals, in a dissenting opinion, cited *Hayashi* and agreed with the majority opinion that certiorari was the appropriate remedy.

Because of the broad scope of the civil rules regarding discovery and the adverse effect the trial court's order would have on the presentation of plaintiff's cause of action, we feel the writ should issue. In so doing, we do not wish to stray from our original position that such relief will not normally be granted.

CR 26 has been labeled as the "General Provisions Governing Discovery." Section (b) states as follows:

> (b) Scope of Discovery. Unless otherwise limited by order of the court in accordance with these rules, the scope of discovery is as follows:
> (1) *In General.* Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party, including the existence, description, nature, custody, condition and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of any discoverable matter. It is not ground for objection that the information sought will be inadmissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence.

CR 33(b) states that "[i]nterrogatories may relate to any matters which can be inquired into under Rule

26(b), . . ." The Washington rules were patterned after the Federal Rules of Civil Procedure which were established to permit broad discovery. *Harris v. Nelson*, 394 U.S. 286, 22 L. Ed. 2d 281, 89 S. Ct. 1082 (1969). The only limitation is relevancy to the subject matter involved in the action, not to the precise issues framed by the pleadings; and inquiry as to any matter which is or may become relevant to the subject matter of the action should be allowed, subject only to the objection of privilege. *Felix A. Thillet, Inc. v. Kelly-Springfield Tire Co.*, 41 F.R.D. 55 (D.P.R. 1966). The test in determining relevancy of interrogatories is whether the testimony sought may reasonably be expected to lead to the discovery of admissible evidence. *Provisional Government of French Republic v. Tower's Warehouse, Inc.*, 11 F.R.D. 291 (S.D.N.Y. 1951); *Diel v. Beekman*, 7 Wn. App. 139, 499 P.2d 37 (1972). As stated in the landmark case of *Hickman v. Taylor*, 329 U.S. 495, 507, 91 L. Ed. 451, 67 S. Ct. 385 (1947):

> [T]he deposition-discovery rules are to be accorded a broad and liberal treatment. No longer can the time-honored cry of "fishing expedition" serve to preclude a party from inquiring into the facts underlying his opponent's case. Mutual knowledge of all the relevant facts gathered by both parties is essential to proper litigation. To that end, either party may compel the other to disgorge whatever facts he has in his possession. The deposition-discovery procedure simply advances the stage at which the disclosure can be compelled from the time of trial to the period preceding it, thus reducing the possibility of surprise.

(Footnote omitted.)

It appears without question that the haro-bed is the subject on which this action is based. The interrogatories in question relate directly to it. They inquire about its acquisition, the names of the employees of its seller who remained with New Holland, personnel at New Holland in charge of its product safety and design, safety tests, safety committees, records of injuries and lawsuits resulting from accidents involving it, the reason for discontinuance of the

double-acting hydraulic cylinder after the accident, and the names of persons who gave statements to New Holland about the matter. It is entirely possible that each of these questions may furnish information that would be admissible at trial. With the exception of the last part of interrogatory No. 20, they are proper subjects of discovery and the trial court erred in sustaining New Holland's objections to them.

The order of the trial court is accordingly so modified.

HALE, C.J., and FINLEY, ROSELLINI, HUNTER, STAFFORD, WRIGHT, UTTER, and BRACHTENBACH, JJ., concur.